UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CLAUDIA MARLICE ROBERTSON        CIVIL ACTION NO. 08-cv-0150

VERSUS                            REFERRED TO:

U.S. COMMISSIONER SOCIAL          MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**MEMORANDUM RULING**

Claudia Robertson ("Plaintiff") filed an application for disability benefits based primarily on limitations related to back pain. Plaintiff was born in 1955, and she has past work experience in jobs such as accounts payable clerk and gambling cashier. The ALJ reviewed the evidence and determined that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of sedentary work, which included the ability to sit for about six hours per workday, the ability to stand or walk for about two hours per day, but with the limitation that she be allowed to alternate positions between sitting and standing for three to four minutes every hour. A vocational expert ("VE") testified that a person with that RFC and Plaintiff's other vocational factors could perform the work of an accounts payable clerk and a casino gambling cashier. Based on that testimony, the ALJ found that Plaintiff was not disabled at step four of the five-step analysis.

Plaintiff argues on appeal that the ALJ did not adequately address, or assess her credibility, regarding her sitting limitations, claim of incontinence, and testimony about migraines. Plaintiff testified that her back problems caused her to lead a very limited

lifestyle, permitted her to stand only two hours per day, and sit for only 25 minutes at a time. The ALJ acknowledged that testimony in his written decision, as well as Plaintiff's claim that she has to go to the bathroom every hour because of incontinence. Tr. 20-21. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce those sorts of symptoms, but he found that Plaintiff's statements about the intensity, persistence and limiting effects of the symptoms were credible only to the extent consistent with the medical evidence and the assessed RFC.

Plaintiff complains that this statement is not in compliance with the requirements of the regulation for assessing credibility. That conclusion, however, is supported by the portions of the written decision that follow and summarize the medical evidence. For example, the ALJ notes 2004 X-rays that indicated normal findings. An MRI did indicate slight bulging in a cervical disc and mild degeneration in the lumbar area, but there was no indication of nerve root or spinal cord impingement, and a nerve conduction study was completely normal. Plaintiff rated her pain as low as three or four on a scale of 10.

A consultative examination by Dr. Eric Wascome found a limited range of motion in the neck, normal range of motion in the back and other joints, and normal muscle mass with no sign of atrophy. Plaintiff had good grip strength and could perform fine motor movements. She could rise from her seat without assistance, stand on her tiptoes, and perform other examination requirements. Her neurological findings were normal. Dr. Wascome wrote that Plaintiff "should refrain from manual labor including lifting or

carrying objects" but "should be able to sit for a full workday [and perform the mental demands of work]." Tr. 178-80.

A state agency physician, Dr. Gerald Dzurik, reviewed the medical evidence and gave an opinion that Plaintiff could, among other things, sit, stand, or walk for about six hours of an eight-hour workday. Tr. 196-203. Finally, the decision was issued in early 2007, that Plaintiff did not submit any records that indicated she saw a physician for any medical treatment during 2006. Of the medical records that were present, none included a physician's indication that Plaintiff was so limited as depicted in her testimony.

The ALJ initially stated that Plaintiff's receipt of unemployment benefits for several months during the time in which she claimed to be disabled detracted from her credibility, because one must be able to work to be eligible for unemployment benefits. The ALJ then backed off that issue by acknowledging that a person might be able to perform some work (and properly obtain unemployment benefits) but still be found disabled under Social Security regulations. Tr. 19. Plaintiff takes issue with the ALJ's initial statement, but the overall discussion reflects that the ALJ did not place undue weight on this single factor in assessing credibility.

The ALJ also faulted Plaintiff for not following prescribed treatment that could restore her ability to work. He pointed to Plaintiff's rejection of a surgical fusion, and he said that refusal was considered for purposes of credibility. Tr. 21. Plaintiff testified, however, that she was told that fusion surgery would put her in a wheelchair, and that physicians "said it

wasn't an option right now." Tr. 251. She added that a neurosurgeon told her that it would put her in more pain than she has now. Dr. Wascome's report also includes in Plaintiff's history that she "has been to several neurosurgeons and has been told that she is not an operative candidate." Tr. 178. The Commissioner has not pointed to contrary evidence, so the ALJ may have been off base in his assessment of this credibility factor.

The undersigned has recommended or granted relief when an ALJ failed to make a proper credibility assessment with regard to testimony about a critical limitation or symptom that was not adequately addressed in the ALJ's decision. Plaintiff has cited one such decision, Moore v. Barnhart, 05 CV 0696. But an ALJ need not specifically address the credibility of each line or component of testimony to withstand judicial scrutiny. See Clary v. Barnhart, 2007 WL 201145 (5th Cir. 2007) ("The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility") and Undheim v. Barnhart, 2007 WL 178062 (5th Cir. 2007) ("An ALJ is not required to follow formalistic rules when articulating the reasons for his credibility determination"). But the ALJ may not overlook significant lines of evidence or leave unresolved significant conflicts in the evidence. Draper v. Barnhart, 425 F.3d 1127 (8th Cir. 2005); Henderson v. Apfel, 179 F.3d 507, 514 (7th Cir. 1999). See also Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (where credibility is a critical factor, the ALJ must either explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding).

The ALJ's opinion, as a whole, gives sufficient reasons and documentation for his rejection, with respect to the back pain symptoms listed by Plaintiff, of a degree of limitation greater than reflected in his RFC. The ALJ may have been a bit mistaken about Plaintiff being wrong to refuse surgery, although there may be supporting evidence on that issue that has simply not been identified by the Commissioner in the briefs. The medical reports are more than ample to make up for any mistake in that regard and fully support the ALJ's assessment of Plaintiff's RFC. He gave adequate reasons to reject Plaintiff's testimony that her back problems caused her the extraordinary limitations claimed in her testimony.

The ALJ also acknowledged in his decision Plaintiff's testimony that she has to go to the bathroom every hour. Tr. 21. The VE testified that such breaks would preclude work. The ALJ's decision did not specifically address the credibility or merit of the incontinence claim, but the claim was mentioned within in the general discussions of symptoms that he deemed credible only to the extent consistent with the medical evidence and his RFC. Plaintiff does not point to any medical evidence that supports her claim. Plaintiff did report diarrhea to Dr. Wascome, but she denied incontinence. Tr. 179. This issue might not be enough, alone, to warrant remand, but remand is required for the issue discussed below, so the claim may be directly addressed by the agency.

Plaintiff testified that she has migraines two or three times a month, sometimes more often, that incapacitate her and would cause her to miss work at those times. Plaintiff said that she takes Imitrex as treatment. Tr. 258. The VE testified that it would eliminate jobs

if Plaintiff had to be out two days a month because of migraines. Tr. 269. The ALJ did not specifically mention the claim of migraines in his written decision.

The court has reviewed the medical records and found that Imitrex, a migraine medication, was listed among Plaintiff's medications. Tr. 127. Plaintiff listed that it was prescribed by Dr. Crudo, and a review of that treating physician's records reveals numerous references to migraine headaches and Imitrex. See e.g. Tr. 148, 149, 150, 154, 155, 156, 157, 158, 160. This is different from the incontinence testimony, that had no cited support in the medical records. Plaintiff squarely testified that she suffered from frequent migraines, the medical records contain supporting documentation of prior complaints and prescribed treatment, and the VE testified that the limitations claimed to exist because of the migraines would preclude work. An absence of discussion of this issue deprives the agency decision of substantial evidence. It is not the proper role of the court to decide the claim in the first instance. Rather, the case should be remanded so that the agency may address it in the first instance.

On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is

ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 2nd day of February, 2009.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE